NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250515-U

NO. 4-25-0515

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 15, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Henry County |
| BENJAMIN SANGRAAL, n/k/a Benjamin McBroom, | ) | No. 24MX13 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Colby G. Hathaway, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed an order dismissing defendant's untimely "Verified Amended Petition for a Certificate of Innocence."

¶ 2     In 2024, defendant, Benjamin McBroom, filed what he labeled as a "Verified Amended Petition for a Certificate of Innocence" without leave of court. This petition was docketed as newly opened Henry County case No. 24-MX-13. Defendant alleged he was innocent of the charges filed against him in Henry County case No. 11-CF-386, for which he served part of a prison sentence before his convictions were reversed on appeal in 2015. See *People v. Sangraal*, 2015 IL App (3d) 130177-U, ¶¶ 21, 25. (Evidently, defendant changed his last name at some point after he was charged in the 2011 case.) The State moved to dismiss defendant's 2024 "amended" petition as untimely. The trial court granted the State's motion, and defendant appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       The record on appeal contains little of the record from the underlying criminal proceedings. We glean that in August 2011, defendant took four photographs of two 12-year-old boys urinating in a school bathroom. When the police extracted data from defendant's phone, they found three additional photographs depicting an unknown child urinating. The State charged defendant in case No. 11-CF-386 with four counts of attempted child pornography (720 ILCS 5/8-4, 11-20.1(a)(1)(vii) (West 2010)) (relating to the children whose identities were known) and three counts of child pornography (720 ILCS 5/11-20.1(a)(6), (a)(1)(vii) (West 2010)) (relating to the unknown child). Perhaps due to an error or oversight, the statutes the State charged defendant with violating applied to victims between the ages of 13 and 18. The matter proceeded to a bench trial, and the trial court, Ted J. Hamer presiding, found defendant guilty of all counts and sentenced him to prison.

¶ 5       The Appellate Court, Third District, reversed defendant's convictions based on the State's failure to prove that the subject children were between 13 and 18 years old. *Sangraal*, 2015 IL App (3d) 130177-U, ¶¶ 21, 25. Justice Holdridge wrote a dissent, taking the position that the matter should be remanded to allow the State to file amended charges for aggravated child pornography and attempted aggravated child pornography, which would apply to victims under the age of 13. *Sangraal*, 2015 IL App (3d) 130177-U, ¶¶ 30-31 (Holdridge, J., dissenting).

¶ 6       The appellate court's mandate in case No. 11-CF-386 issued on August 31, 2015. On October 16, 2015, the State formally dismissed the charges against defendant, commencing the two-year statute of limitations for him to file a petition for a certificate of innocence. See 735 ILCS 5/2-702(i) (West 2014).

¶ 7       On July 18, 2016, a judge granted defendant's petition to expunge records in connection with case No. 11-CF-386. As part of that order, the trial court directed the clerk of the

circuit court of Henry County to impound the records "until further order of the court upon good cause shown." See 20 ILCS 2630/5.2(a)(1)(E) (West 2016) (as part of defining the term expunge, the statute provides that court clerks need not physically destroy their files, but should instead impound them).

¶ 8        On January 25, 2024, defendant filed a "Verified Amended Petition for a Certificate of Innocence," which was docketed as a new action: case No. 24-MX-13. Defendant alleged that on or about July 12, 2017, he filed his original petition for a certificate of innocence by mailing it to the clerk of the circuit court of Henry County, along with proof of service to the Henry County State's Attorney and the Illinois Attorney General. However, defendant conceded he did not possess documentation proving that he mailed those documents. Defendant alleged that he presumed the 2017 petition was timely filed, as the documents were never returned to him and he mailed the petition consistent with directions he received from the circuit court clerk. On the other hand, defendant also acknowledged that the original petition was "apparently never filed." According to defendant, for purposes of the statute of limitations, the 2024 "amended" petition related back to the original petition. See 735 ILCS 5/2-616(b) (West 2024). Defendant attached as exhibits to his "amended" petition (1) a copy of the appellate court disposition in case No. 11-CF-386; (2) a docket sheet from that case, which showed the last activity occurred in October 2015, when the State moved to dismiss the charges; and (3) the expungement order entered in July 2016.

¶ 9        On April 25, 2024, defendant mailed a subpoena to the Office of the Illinois Attorney General. Defendant requested documents relating to a petition for a certificate of innocence filed by Benjamin Sangraal "in 2016 and/or 2017."

¶ 10        On May 9, 2024, the State moved to dismiss defendant's "amended" petition for a certificate of innocence pursuant to section 2-619 of the Code of Civil Procedure (Code) (735

ILCS 5/2-619 (West 2024)). The State argued that defendant's request for a certificate of innocence was untimely, reasoning as follows. Defendant's documentation showed that case No. 11-CF-386 was dismissed on October 16, 2015. That meant defendant needed to file a petition for a certificate of innocence by October 16, 2017. No documents indicated that defendant filed a petition for a certificate of innocence before the records in connection with case No. 11-CF-386 were expunged and impounded on July 18, 2016. Moreover, defendant failed to provide documentation that he requested to "open up" the records in the criminal case, which was necessary because the records were impounded. The State argued defendant's request for a certificate of innocence should be dismissed with prejudice, as "his request comes more than 2 years after the entry of the dismissal" in the criminal case.

¶ 11        On May 31, 2024, defendant filed a response to the State's motion to dismiss. He emphasized he alleged in his "amended" petition that he filed an original petition in 2017, so any factual dispute on that point was a "question for trial." Defendant also asserted that discovery from both the Illinois Attorney General and the Henry County State's Attorney would prove the timeliness of the original petition, as those offices might have copies of the petition he mailed in 2017. Defendant further argued that contrary to what the State claimed in its motion to dismiss, there was no requirement for him to move to "unseal" the underlying criminal record to pursue a certificate of innocence.

¶ 12        On July 11, 2024, defendant filed a motion for a rule to show cause why the Illinois Attorney General should not be held in contempt for failing to respond to his subpoena for records.

¶ 13        Defendant appeared remotely for proceedings in this case for the first time on May 13, 2025, pursuant to a writ to the Illinois Department of Corrections. (Defendant was serving a prison sentence in connection with charges unrelated to the ones for which he sought a certificate

of innocence.) The trial court said the matter was set for a hearing on the State's motion to dismiss. The state's attorney indicated she was ready to proceed. Defendant said he was not, as he did not have notice of this court date and needed time to prepare. Defendant explained there was a lengthy delay in obtaining his mail in prison. Defendant added that he "got a call pass last night" but was not notified of the hearing's purpose. Defendant also mentioned that he had difficulty writing due to an injury and was subject to frequent prison lockdowns, which impaired his ability to conduct legal research and prepare for court proceedings. Defendant requested the court appoint an attorney for him or allow him "some accommodation" to facilitate legal research.

¶ 14    The trial court noted that the State filed its motion to dismiss in May 2024 and that defendant had already responded to that motion. Thus, in the court's view, all that remained was oral argument on the motion. The court declined to appoint counsel for defendant and noted that he had not made specific suggestions about what type of accommodations would be helpful under the circumstances.

¶ 15    Defendant responded that he had a limited opportunity to conduct legal research and reiterated that he was unaware the matter had been set for a hearing on the State's motion to dismiss. Defendant also requested the trial court address his motion for a rule to show cause directed against the Illinois Attorney General before addressing the State's motion to dismiss. Defendant added: "Because if the attorney general's office, or the clerk, or someone else who is subject to subpoena, does indeed have *** this documentation, I think that that would be important to have for the dismissal motion hearing."

¶ 16    The State objected to defendant's request to continue the hearing. The state's attorney said she did not see any "documentation about a subpoena," so she was not sure what defendant was referencing. The trial court confirmed that "there was a subpoena issued to the

attorney general's office previously" and a "motion for rule to show cause regarding that subpoena." Nevertheless, the court ruled that it would "move forward today on a hearing on the motion to dismiss," as the parties had briefed that issue and "this matter *** has been pending for quite some time."

¶ 17     The state's attorney then argued as follows in support of the motion to dismiss:

"The previous case that is at issue here that's the Henry County case, it's already been expunged. As this Court is aware, an expungement order requires that, not only for any [Freedom of Information Act] or subpoena purposes, that offices would not be allowed to respond as an expungement essentially wipes clear the slate. But also that if for any reason that case did need to be reopened, then a motion would have to be filed with the court in order to request permission of the judge to open it back up for whatever reason that someone might request and for the Court to review that.

That did not happen here. So not only on the timeline basis, but on a procedural basis, the State would ask the Court, again, dismiss the request with prejudice."

¶ 18     Defendant then argued against the State's motion to dismiss. Defendant first argued his failure to move to reopen case No. 11-CF-386 was not a reason to dismiss his request for a certificate of innocence. As part of that argument, defendant suggested that the trial court could "unseal" the records in case No. 11-CF-386 to make them accessible, if that were necessary. However, he added that the court could impound the records so that he would not forfeit his right to privacy "just by trying to have the matter reviewed." Immediately thereafter, defendant said that he would object to unsealing the record, as he did not "really think any of that is necessary."

¶ 19 Defendant then addressed the timeliness of his request for a certificate of innocence. He argued that he attested in his 2024 verified "amended" petition that he complied with the statute of limitations. He asserted that he was "prejudiced by the way that the original petition was handled or mishandled by whoever handled or mishandled it." Defendant noted that the State did not deny receiving a copy of the timely original petition in 2017. Defendant further explained that he "spent a lot of time on the phone with the clerk's office about a year ago, and with the state's attorney's office, trying to track down copies of the documentation that was mailed back in 2017." Defendant claimed that he mailed copies of that petition to the clerk of the circuit court of Henry County, the Illinois Attorney General, and the state's attorney's office. However, he conceded that he had "no ability to produce at this point a copy of the original filing," as he "lost all [his] former legal paperwork" while incarcerated on charges unrelated to this appeal. Defendant recalled "racing" to make sure that the original petition was "in on time." He added that he "followed all the instructions that [he] was given by the Henry County Circuit Clerk as far as filing it, how to caption it," and how to "make sure that it was served on all the appropriate parties." He offered to be sworn in to testify to those matters.

¶ 20 Defendant further suggested that before the trial court dismissed his "amended" petition for a certificate of innocence with prejudice, the court should allow discovery to explore whether the State and the clerk's office received those documents in 2017. He asserted that it was "possible that those original documents" or a copy of them could still resurface. Defendant insisted that he was factually innocent of the charges in case No. 11-CF-386 and was entitled to a certificate of innocence.

¶ 21 In rebuttal argument, the state's attorney argued as follows:

"Your Honor, his original petition indicates that he had received those

documents that he claims to have sent back to him, that there was an error in filing, and he makes no statement as to whether they were ever re-filed.

And so, again, the State's—the disconnect here seems to be in fully understanding what an expungement limits certain agencies from doing and what it provides to a person situated as *** [defendant] is.

That expungement makes as if that case never occurred. It is wiped clean from the record, and the statute itself, not case law, not *dicta*, not anything else, the statute, requires that, if asked about anything to do with that case that has been lawfully expunged, we are to respond as if it never occurred. And so, again, without *** anything to indicate to the contrary, that is the position we are in.

We would ask, again, due to the timeliness issue, that his petition be dismissed."

At this point, the trial court asked the state's attorney whether she had a copy of the petition for a certificate of innocence that defendant allegedly filed in 2017. She replied:

"I do not believe that in my—in the current exchange—and by 'current,' I mean regarding this petition and motion to dismiss—I do not believe that I've seen that, Your Honor. I'm just checking through.

No, Your Honor. I don't *** have anything like that with my documents on this case."

¶ 22       The trial court gave defendant the opportunity to present further argument. Defendant suggested that the state's attorney's answer to the court's question was evasive. Defendant again suggested that discovery would prove the State had received the petition, and he reminded the court of the outstanding subpoena to the Illinois Attorney General. Defendant also

asserted that the State was "misrepresenting the pleadings," as he expressly alleged in his "amended" petition that the original petition was never returned to him. Defendant added: "In fact, when I *** inquired with the clerk, they told me that because it related to this expunged case, until the court took action on it, they couldn't give me any update as far as whether it had been filed or what." Defendant mentioned the possibility that the original petition "may have been filed into the original expunged case somehow." Defendant further insisted that the original petition was never returned to him and he had no reason to know the petition was not filed "until years pas[sed]." Defendant said that after spending a lot of time on the phone with the clerk's office and the state's attorney's office about a year before this hearing, he came to assume that the original petition was never filed.

¶ 23　　　　Defendant concluded his argument by maintaining that the trial court could "unseal the case now" if the court thought doing so was necessary. However, he also proposed that the court should "put some type of seal on it so that the *** expungement isn't just completely *** undone." Defendant expressed his belief that the State had some documentation, somewhere, regarding the original petition he mailed in 2017.

¶ 24　　　　The trial court issued its ruling. The court stated that it considered the State's motion, defendant's response, and the parties' oral arguments. The court added that it could "take judicial notice of its own records here." In the court's view, the dispositive issue was whether defendant had timely filed a petition for a certificate of innocence by October 16, 2017. On that point, the court made the following findings:

> "There are no court records showing that [defendant] filed for the certificate of innocence within the time period that is required by statute. We're now in 2025. This immediate matter was filed back in 2024. Again, [defendant] is claiming he

filed something back in 2017.

So this isn't a situation *** where shortly after that deadline there was some type of rush to the courthouse to get that filed and then they're seeking an extension of time. This is many years after the fact of when this would have had to have been filed.

Again, the Court records show that nothing was placed on file as far as a request for a certificate of innocence by [defendant] within the required time period."

Accordingly, the court granted the State's motion to dismiss.

¶ 25        Defendant filed a timely notice of appeal.

¶ 26                                II. ANALYSIS

¶ 27        On appeal, defendant argues that the trial court improperly granted the State's motion to dismiss his "Verified Amended Petition for a Certificate of Innocence" and abused its discretion by denying his oral request to continue the hearing on that motion. The State defends the court's rulings. After the State filed its appellee's brief, defendant filed a motion for sanctions against the State pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). The State filed a response to that motion, and we took the matter with the case.

¶ 28        To address the parties' arguments, we will consider the issues in the following order: (1) whether the trial court abused its discretion by denying defendant's oral request for a continuance, (2) whether the court properly took judicial notice of its own records *sua sponte*, (3) whether the court properly granted the State's motion to dismiss, and (4) whether sanctions against the State are warranted.

¶ 29                A. Defendant's Oral Request to Continue the Hearing

¶ 30　　　　When defendant appeared remotely on May 13, 2025, the trial court said the matter was set for a hearing on the State's motion to dismiss. Although the state's attorney was ready to proceed on that motion, defendant orally requested a continuance. He argued that (1) he was unprepared because he lacked advance notice of the hearing, (2) prison lockdowns and an injury made it difficult for him to conduct legal research, and (3) he had a rule to show cause on file against the Illinois Attorney General for failing to respond to a subpoena. The court denied the request for a continuance, and defendant argues this was an abuse of discretion. See *In re Marriage of LaRocque*, 2018 IL App (2d) 160973, ¶ 94 (noting that an appellate court reviews a "decision to deny a motion for a continuance for an abuse of discretion, which occurs where the ruling is 'arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view' ") (quoting *K&K Iron Works, Inc. v. Marc Realty, LLC*, 2014 IL App (1st) 133688, ¶ 22); *People v. Terrell*, 2022 IL App (1st) 192184, ¶ 40 (observing that "a certificate of innocence proceeding is a unique civil proceeding, created solely by statute, and is subject to the rules of civil procedure"). We hold that the court acted within its discretion by denying defendant's oral request for a continuance.

¶ 31　　　　By the time defendant filed his "amended" petition seeking a certificate of innocence in 2024, he was serving a prison sentence on unrelated charges. To be sure, litigating a case *pro se* and while incarcerated poses certain challenges. For example, defendant told the trial court on May 13, 2025, that due to delays with the prison mailing system, he had little notice of the court date and was unaware that the matter was set for a hearing on the State's motion to dismiss. The court obviously took that into consideration when ruling on defendant's request for a continuance. On the other hand, the court was also entitled to consider that the State's motion to dismiss was barely over a page in length, it had been on file for a year, and defendant already

- 11 -

responded to it in writing. The court was justified in finding that prison lockdowns and defendant's hand injury were not compelling reasons for a continuance in this case, as the State's motion was already briefed.

¶ 32        The record shows that the trial court was aware defendant had filed a motion for a rule to show cause against the Illinois Attorney General for failing to respond to a subpoena. However, that request for a rule to show cause was inextricably linked with defendant's response to the substantive merits of the State's motion to dismiss. Notably, defendant took the position in his response to the State's motion that it would be premature to dismiss his "amended" petition before he conducted discovery. Thus, defendant's point about the pending motion for a rule to show cause was not actually a reason to continue the hearing set for May 13, 2025; rather it went to the heart of why defendant believed the court should deny the State's motion on the merits.

¶ 33        Under the circumstances, the trial court acted within its discretion by denying defendant's oral motion to continue the hearing on the State's motion to dismiss.

¶ 34                                B. Judicial Notice

¶ 35        Defendant also argues that the trial court erroneously took judicial notice of its records *sua sponte*. We discern no error.

¶ 36        A trial court may take judicial notice of adjudicative facts "at any stage of the proceeding," regardless of whether the parties make such a request. Ill. R. Evid. 201(c), (f) (eff. Jan. 1, 2011). This includes taking judicial notice as part of ruling on a motion to dismiss a complaint or pleading pursuant to section 2-619 of the Code. See *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004) (recognizing that parties to a section 2-619 motion may ask the court "to take judicial notice of facts contained in public records where such notice will aid in the efficient disposition of the case"). A fact is amenable to judicial notice

if it is "not subject to reasonable dispute," such as where it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ill. R. Evid. 201(b) (eff. Jan. 1, 2011). "A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed," including "after judicial notice has been taken." Ill. R. Evid. 201(e) (eff. Jan. 1, 2011). A court's decision to take judicial notice of a fact is reviewed for abuse of discretion. See *In re Soren W.*, 2026 IL App (5th) 251004, ¶ 70.

¶ 37      Here, the trial court took judicial notice of its own records to ascertain that the original timely petition for a certificate of innocence that defendant claimed he mailed to the clerk of the circuit court of Henry County in 2017 was not filed. We hold that this was a proper exercise of judicial notice. Determining whether and when defendant's original petition was filed was a matter that was "capable of accurate and ready determination" (see Ill. R. Evid. 201(b) (eff. Jan. 1, 2011)) from a simple review of the court's own records of defendant's cases, one of which was apparently inaccessible to the parties because the expungement records were impounded. Although defendant speculates that the court may have missed something in its review of the court records, the accuracy of the court records themselves is not something that can "reasonably be questioned." Ill. R. Evid. 201(b) (eff. Jan. 1, 2011). Indeed, circuit court clerks must maintain records in accordance with the standards stemming from the Supreme Court's General Administrative Order on Recordkeeping in the Circuit Courts (Ill. S. Ct., M.R. 1218 (eff. May 20, 1968)). The court acted within its discretion by consulting its own records to ascertain whether defendant had a petition for a certificate of innocence on file before the statute of limitations expired in 2017.

¶ 38      In challenging the trial court's action, defendant contends that (1) the court improperly acted as an advocate for the State, (2) the judicially noticed facts were not beyond

reasonable dispute, as he challenged whether the clerk of the circuit court of Henry County "grossly mishandled" his original petition, and (3) he had no opportunity to object to the court's action. Defendant further proposes that it is possible that his 2017 petition was indeed filed, as the court did not specify which records it searched or the manner in which it conducted the search. These arguments are unpersuasive.

¶ 39        Contrary to what defendant argues, the trial court did not abandon its role as a neutral arbiter, nor did it advocate for the State. Rather, the court acted appropriately in light of the unusual circumstances of the case. In a certificate-of-innocence proceeding, the petitioner must attach documents to the petition demonstrating that his or her claim is *not* barred by the two-year statute of limitations. 735 ILCS 5/2-702(c)(3), (i) (West 2024). In violation of that statutory requirement, the documents defendant attached to his 2024 "amended" petition, which was filed more than six years after the statute of limitations expired, did not demonstrate that his claim was timely. Additionally, defendant advanced his claim for a certificate of innocence in a procedurally improper manner, captioning his pleading as an "amended" petition without obtaining or even requesting leave of court to do so. As a further anomaly, defendant alleged that his "amended" petition related back to an original petition that he admitted he had no proof he ever mailed for filing.

¶ 40        During the hearing on the State's motion to dismiss, neither defendant nor the state's attorney informed the trial court whether the petition defendant claimed he mailed to the clerk of the circuit court of Henry County in 2017 was ever filed. The parties stated that the court records attendant to case No. 11-CF-386 were impounded by virtue of an expungement order entered in 2016.

¶ 41        Under the totality of the circumstances, the trial court was justified in consulting its

own records to ascertain whether there was any indication that defendant filed a timely petition. After all, having a timely petition on file was a prerequisite before the court would have the discretion to allow defendant to proceed on an "amended" pleading that he submitted years after the statute of limitations had expired. See *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74 (1992) (noting that a trial court has broad discretion to determine whether the circumstances justify allowing a party to amend its pleadings); 735 ILCS 5/2-616(b) (West 2024) (providing that an untimely pleading may relate back to a pleading that was timely "filed"). In consulting its own records, the court did not act as an advocate for either party, but rather, it took an appropriate action that was within its discretion.

¶ 42       Defendant's contention that there was a reasonable dispute regarding the contents of the court records is unpersuasive. Although defendant claimed he mailed a petition to the clerk of the circuit court of Henry County in 2017, he clearly had no personal knowledge of whether that petition was ever filed. Defendant speculated that the original petition may have been misfiled or never filed at all, yet he had no basis to dispute what the trial court found the files actually contained.

¶ 43       Defendant's point that he had no opportunity to object to the trial court taking judicial notice of its records is unavailing. During the hearing, defendant invited the court to "unseal" the court records in case No. 11-CF-386, yet he expressed concerns about not wanting to lose the privacy benefits of the expungement order. Apparently demonstrating sensitivity to the concerns defendant raised, the court chose to review the records itself, rather than vacating the expungement order to open the records to public scrutiny. Additionally, although defendant complains that the court did not give him an opportunity to object to taking judicial notice of the records, he has not identified any valid basis on which he could have objected.

¶ 44	Finally, defendant's speculation that the trial court may have missed something when it searched its records does not change our analysis of whether the court acted within its discretion by taking judicial notice. The record on appeal gives us no reason to doubt that the court conducted a thorough search before concluding that no timely petition was filed.

¶ 45	C. The Ruling on the State's Motion to Dismiss

¶ 46	Defendant also argues that the trial court erroneously granted the State's motion to dismiss his "Verified Amended Petition for a Certificate of Innocence." We affirm the judgment.

¶ 47	"The purpose of a section 2-619 motion to dismiss is to dispose of issues of law and easily proved issues of fact early in the litigation." *Jordan v. Jordan*, 2026 IL App (4th) 250477, ¶ 31. One basis for such a motion is that "the action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2024). By filing a motion to dismiss pursuant to section 2-619, the movant "admits as true all well-pleaded facts in the complaint, along with all reasonable inferences that can be gleaned from those facts." *Jordan*, 2026 IL App (4th) 250477, ¶ 31. A court must construe the pleadings in the light most favorable to the nonmoving party and will dismiss the action only if it appears that the nonmoving party can prove no set of facts to support the action. *Pinkston v. City of Chicago*, 2023 IL 128575, ¶ 22. We review a ruling on a motion to dismiss *de novo*. *Pinkston*, 2023 IL 128575, ¶ 22.

¶ 48	Defendant alleged in his 2024 "Verified Amended Petition for a Certificate of Innocence" that he mailed his original petition to the clerk of the circuit court of Henry County for filing in 2017, before the two-year statute of limitations expired, and that the petition was never returned to him. The State never produced any evidence to refute that allegation. Additionally, by filing a section 2-619 motion to dismiss defendant's 2024 pleading, the State necessarily admitted the truth of defendant's well-pleaded factual allegation that he mailed a timely petition for filing

in 2017. Thus, for purposes of this issue on appeal, we accept as true that defendant mailed a petition for filing in 2017 and that the petition was never returned to him.

¶ 49     In challenging the dismissal order, defendant seems to suggest that we must also accept as true his allegation that the petition he mailed in 2017 was timely *filed*, as the State did not prove otherwise. We reject that argument. Defendant plainly had no personal knowledge of whether the petition he mailed was ever filed. Although he alleged at one point in his "Verified Amended Petition for a Certificate of Innocence" that his original petition was filed "on or about July 12, 2017, via USPS Priority Mail to the Henry County Circuit Clerk," he acknowledged elsewhere in this same pleading that his petition "was apparently never filed." Moreover, defendant's claim that his "Verified Amended Petition for a Certificate of Innocence" related back to an original petition for purposes of the statute of limitations was a pure legal conclusion, which the trial court was not required to accept as true for purposes of adjudicating the motion to dismiss. See *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 16 ("A motion to dismiss under section 2-619 admits well-pleaded facts but does not admit conclusions of law and conclusory factual allegations unsupported by allegations of specific facts alleged in the complaint."). Additionally, as explained above, from taking judicial notice of its own records, the court made an express finding that there was no timely original petition filed.

¶ 50     Relying on *NCD, Inc. v. Kemel*, 308 Ill. App. 3d 814 (1999), and *Azim v. Department of Central Management Services*, 164 Ill. App. 3d 298 (1987), defendant reasons that "[t]he Circuit Clerk's failure to properly file the original Petition does not render the Petition untimely." We determine these cases are distinguishable and do not support defendant's broader argument that his self-styled 2024 "amended" pleading related back to a timely filed original pleading.

¶ 51    In *NCD*, the defendants' answer to the plaintiffs' complaint was due on December 9, 1996. *NCD*, 308 Ill. App. 3d at 816. On December 9, 1996, the trial court entered a default judgment against the defendants under the erroneous belief that they failed to file an answer. *NCD*, 308 Ill. App. 3d at 816. Apparently, the court clerk file-stamped the defendants' answer and made it part of the court file later during the day on December 9, after the court had already entered a default judgment. See *NCD*, 308 Ill. App. 3d at 818 ("The record includes [the] defendants' answer, which shows it was file-stamped on the date it was due."). Realizing that the defendants had indeed filed a timely answer, the court granted the defendants' motion to vacate the dismissal pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 1998)). *NCD*, 308 Ill. App. 3d at 816. The plaintiff appealed that order.

¶ 52    On appeal, the plaintiff did not dispute that the trial court "entered a default judgment because it mistakenly believed that [the] defendants failed to file an answer." *NCD*, 308 Ill. App. 3d at 817. Nevertheless, in arguing that the defendants failed to exercise due diligence in pursuing their defense of the action, the plaintiff argued that litigants have "a duty to ensure that the clerk of the circuit court file-stamps a pleading and places it in the court file." *NCD*, 308 Ill. App. 3d at 818. The appellate court rejected that argument, reasoning that (1) "[c]ourts tend to relax the due diligence standard to prevent the unjust entry of default judgments and to effect substantial justice" and (2) "[t]he clerical errors of the clerk of the circuit court should not deprive defendants of their right to have the case decided on the merits." *NCD*, 308 Ill. App. 3d at 818.

¶ 53    In *Azim*, the deadline for the plaintiffs to file their administrative review action and issue summons to the defendants was October 23, 1986. See *Azim*, 164 Ill. App. 3d at 299. On October 21, 1986, a secretary from the plaintiffs' attorney's office mailed copies of the complaint to the circuit court clerk and to the defendants' attorneys. *Azim*, 164 Ill. App. 3d at 299. The clerk's

office received the complaint on October 22. *Azim*, 164 Ill. App. 3d at 299. That same day, an employee from the clerk's office informed the plaintiffs' attorney by phone that he needed to submit a filing fee and could mail that to her, but she assured him the complaint would be filed immediately. *Azim*, 164 Ill. App. 3d at 300. Even though the plaintiffs' attorney promptly submitted payment, the clerk's office did not file the complaint until November 10 and did not issue summonses to the defendants until December 1. *Azim*, 164 Ill. App. 3d at 300. The trial court granted the defendants' motion to dismiss the complaint based on the plaintiffs' failure to file the complaint and issue summonses by October 23. *Azim*, 164 Ill. App. 3d at 301.

¶ 54        The appellate court reversed, reasoning that "the plaintiffs' attorney had a right to rely on the statement made by [the clerk's office's employee] that the complaint would be file-stamped on October 22." *Azim*, 164 Ill. App. 3d at 301. The court determined that the failure to issue summonses by October 23 likewise did not necessitate the dismissal of the action because the plaintiffs acted in "good faith," exhibited "due diligence," and "[t]he delay in the issuance of summonses was caused solely by errors committed by personnel in the clerk's office." *Azim*, 164 Ill. App. 3d at 303.

¶ 55        *NCD* and *Azim* are distinguishable from the present matter. In both cases, the records affirmatively showed that court employees made mistakes in processing timely pleadings. And in both cases, the pleadings, which were eventually filed, would have been deemed timely but for the clerks' errors. *Azim* involved a particularly egregious set of circumstances, as a court employee violated her promise to file a pleading before the statute of limitations expired. Here, by contrast, there is no indication in the record that the clerk of the circuit court of Henry County *ever* received the petition that defendant insists he timely mailed in 2017, and the trial court made a finding that this pleading was not filed. To avail himself of the reasoning of *NCD* and *Azim*,

defendant merely speculates that someone in the clerk's office *may* have mishandled his petition. Again, however, the certificate of innocence statute required defendant to attach to his petition documentation demonstrating that his claim was not time-barred. 735 ILCS 5/2-702(c)(3) (West 2024). Defendant failed to do so, and his "amended" petition, which was untimely on its face, was subject to dismissal. Further distinguishing this matter from *NCD* and *Azim* is that defendant waited more than six years before filing any pleading or motion alerting the court to the possibility that an error was made.

¶ 56     Defendant asserts that a factual question remains as to whether his original petition was timely filed. Ultimately, however, defendant is asking us to remand the cause so that he can investigate his suspicions that the clerk of the circuit court of Henry County may have mishandled his original petition. We recognize that a trial court should not dismiss a pleading pursuant to section 2-619 of the Code unless it appears that the petitioner can prove no set of facts that would entitle him to recover. *Pinkston*, 2023 IL 128575, ¶ 22. However, the discovery that defendant contemplates has no prospect of being probative of the decisive issues—whether the clerk's office received the petition he says he mailed in 2017 and made an error in processing it. Specifically, even if the Illinois Attorney General or the state's attorney were able to locate copies of the petition that defendant says he mailed to them in 2017, that would not mean that the clerk's office received the petition. Defendant's contention that his 2017 petition may have been filed under some case record that the court did not search is further speculation. Simply put, defendant did not meet his statutory obligation to demonstrate the timeliness of his request for a certificate of innocence, and it appears that he has no way of ever proving that his 2024 "amended" petition could be deemed to relate back to a timely filed pleading.

¶ 57     In his reply brief, defendant mentions that Illinois Supreme Court Rule 12(c) (eff.

July 1, 2017) addresses effective dates of service based on when documents are mailed. That rule does not support defendant's arguments. His specific theory is that his 2024 "Verified Amended Petition for a Certificate of Innocence," which is untimely on its face, relates back to a timely 2017 petition. Under section 2-616(b) of the Code, his theory would only hold water if the original petition was timely "filed," which the trial court determined it was not. See 735 ILCS 5/2-616(b) (West 2024). Apparently attempting to distance himself from the requirement that there must be a timely pleading filed before an amended pleading can relate back, defendant asserts in his reply brief that the trial court "implicitly accepted" the amended pleading "as the standing pleading." The record does not support that contention, as defendant filed a self-styled "amended" pleading without requesting leave of court and the court then dismissed that pleading based on the statute of limitations. The court did not "implicitly accept[ ]" anything.

¶ 58     For these reasons, we hold that the trial court properly granted the State's motion to dismiss with prejudice. We need not address the other points the State raises in defense of the judgment.

¶ 59                    D. Defendant's Request for Sanctions

¶ 60     As a final matter, we took with the case defendant's motion to assess sanctions against the State pursuant to Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). We now deny that motion. Although the appellee's brief contains an error regarding the nature of the offenses for which defendant hypothetically could have been charged in case No. 11-CF-386, the State filed an objection/response to defendant's motion for sanctions, apologizing to both defendant and this court for the inadvertent error. We accept the State's representation that the error was inadvertent, and we note that the State cited the correct charges elsewhere in its brief. Moreover, the State's error did not mislead this court or prejudice defendant's presentation of his appeal. Although

defendant further asserts in his motion for sanctions that certain portions of the appellee's brief addressed irrelevant issues, we determine that all the points the State raised in defense of the judgment were within the bounds of acceptable advocacy. Accordingly, we deny defendant's additional request in his motion for sanctions to strike portions of the appellee's brief.

¶ 61                                    III. CONCLUSION

¶ 62          For the reasons stated, we affirm the trial court's judgment dismissing defendant's "Verified Amended Petition for a Certificate of Innocence."

¶ 63          Affirmed.